**In re James G. MONGELLO.**

**Bankruptcy No. 93–08309–PHX–CGC.**

United States Bankruptcy Court, D. Arizona.

July 18, 1994.

Joseph B. Swan, Jr., Phoenix, AZ, for debtor.

Joel A. Stiner, Phoenix, AZ, for Small Business Admin.

## ORDER RE: STATUTE OF LIMITATIONS

CHARLES G. CASE, II, Bankruptcy Judge.

### INTRODUCTION

This case involves a loan from Liberty National Bank ("Liberty") to Arminex, Inc., a company owned by the Debtor. The note was guaranteed by the Small Business Administration ("SBA"). The loan was originally made in 1986 and Arminex, Inc. defaulted in 1987. The loan was guaranteed by the Debtor and secured by the equity in a house owned jointly by him with his mother. After the Debtor defaulted in early 1987, Liberty liquidated certain business collateral. The last credits for collateral liquidation were in July, 1987. The Debtor filed this Chapter 13 bankruptcy in August, 1993.

Along the way, Liberty failed and the Federal Deposit Insurance Corporation ("FDIC") took over the note. In 1991, the SBA was called upon by FDIC to make good on its guarantee. and, following that, took an assignment of the note and the deed of trust. In 1993, the SBA acquired the first lien on the property by advancing an additional $65,000.00 to protect its security position. The SBA has abandoned any claim to personal liability against the Debtor and is only pursuing its *in rem* claim against the property.

### ISSUES PRESENTED

The issues presented are the following:

1. Whether the statute of limitations applicable to the enforcement of the SBA's lien rights derives from Arizona law or Federal law.

2. If Federal law is applicable, whether the SBA is entitled to relief from the automatic stay.

3. If Arizona law is applicable, whether the SBA's claim on its second lien should be disallowed.

### DISCUSSION

**A. What is the appropriate statute of limitations?**

The Debtor argues that since this was a transaction between an Arizona resident and an Arizona bank, Arizona law controls. To this end, the Debtor cites *Atlee Credit Corporation v. Quetulio*, 22 Ariz.App. 116, 524 P.2d 511 (1974), which held that the six-year contract statute of limitations applied to actions to foreclose on real estate security. This result was later codified in A.R.S. § 33–817. Debtor argues that the lien supporting the guarantee is no longer enforceable because the SBA has filed to enforce it within six years from the original default.

The government argues that federal law applies and that there is no federal statute of

limitations governing the SBA's right to foreclose its lien. For this proposition, SBA relies on *Westnau Land Corp. v. U.S. Small Business Administration*, 1 F.3d 112 (2nd Cir.1993) and *United States v. Ward*, 985 F.2d 500 (10th Cir.1993). Both cases hold that the federal six-year statute of limitations relating to money judgments does not impact the government's right to foreclose on a real property lien. 28 U.S.C. § 2415(a). Each of these cases involves a federal loan guaranty program; *Westnau* involves an SBA loan similar to this one and *Ward* involves a Farmers Home Administration loan.

The Debtor distinguishes these cases by arguing that they involve direct loans by the government, rather than guarantees where the government became the holder of the paper by virtue of a subsequent assignment. This assertion is simply incorrect as to *Westnau;* that case is strikingly similar to this one and involved a loan made by a private institution and insured by the SBA. While the distinction is true as to *Ward*, it is a distinction without a difference.

The Debtor's fundamental argument is that since this was originally a transaction between Arizona entities, it should be covered by Arizona law. This is unavailing. The SBA's footprints are everywhere to be found in the documents. Indeed, the deed of trust that is the subject of this dispute specifically states, "this instrument is to be construed and enforced in accordance with applicable federal law."

As a fallback position, the Debtor argues that *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) stands for the proposition that federal law really means state law in circumstances such as these. In *Kimbell*, the United States Supreme Court considered what the appropriate priorities should be as between loans made pursuant to federal programs and private loans. The issue had to do with whether or not the government, when acting as a commercial lender, is entitled to special rules of priority, much like it is entitled to when tax liens are involved.

The Supreme Court held in *Kimbell* that when government-wide loan programs are involved, federal law, not state law, should control the priority scheme and other issues relevant to the interpretation of the government's rights. In the case of priorities (where there is no federal statutory scheme), the Supreme Court decided that applicable federal law would be the same as the applicable state law. In this case, however, as in *Westnau*, there is no federal statutory void. *See* 28 U.S.C. § 2415(a). The *Westnau* court noted that *Kimbell* dealt with a situation where the area involved was unregulated. Here, there is a six-year federal statute relating to money judgments which Courts of Appeals have interpreted not to extend to the equitable *in rem* procedure of foreclosure.

Notwithstanding this authority, the Debtor argues that Section 2415(a) is not determinative because it does not address a limitation period for foreclosure actions. The Debtor's argument still fails. In determining when it is appropriate to rely upon state law as the basis for federal law, the Supreme Court in *Kimbell* looked to the following factors:

1. *Uniformity.*

"Undoubtedly, federal programs that 'by their nature are and must be uniform in character through the Nation' necessitate formulation of controlling federal rules. [citations omitted]. Conversely, when there is little need for a nationally uniform body of law, state law may be incorporated as the federal rule of decision." 440 U.S. at 728, 99 S.Ct. at 1458.

2. *Frustration of Purpose of the Federal Programs.*

"Apart from considerations of uniformity, we must also determine whether the application of state law would frustrate specific objectives of federal programs. If so, we must fashion special rules solicitous of those federal interests." *Id.*

3. *Disruption of Commercial Relationships.*

"Finally, our choice of law inquiry must consider the extent to which the application of a federal rule would disrupt commercial relationships predicated on state law." *Id.* at 728–29, 99 S.Ct. at 1458–59.

Applying these principles, the Supreme Court determined that state law should control in the area of lien priority. Such a rule

would not frustrate any policy objectives in federal loan programs. The Court noted that broad national uniformity already existed in the Uniform Commercial Code. The Court noted that where the government is acting as a commercial lender, it is not necessary or appropriate to give it the protections it enjoys as an "involuntary creditor" involved in the collection of taxes. Finally, the Court expressed concern about the impact on overall credit relationships if the priorities that parties bargained for could be disrupted by a previously unknown "springing" federal lien.

Applying these principles to this case, the balance comes out clearly in favor of the application of the federal statute. In this situation, there is a need for uniformity and statutes of limitations as applied in the various states are notoriously non-uniform. While in Arizona a six-year statute of limitations is applicable to foreclosures, the statute in another state might be two years, or there may be no governing statute at all. In short, unlike Uniform Commercial Code, the differing laws to which the United States would be subject vary wildly in this arena, underscoring the necessity of uniformity. A lack of uniformity could seriously undermine the remedial objectives of the SBA loan program by causing a restriction of available credit due to the increased risks involved where choice of law issues may be raised by a Debtor after default.

Finally, applying the last criteria, the application of the existing federal law (which includes no time limit on foreclosures) would have no discernible disruptive effect upon the expectations upon other private creditors. Rather, the only impact would be upon the private debtors who could receive a windfall if the government did not act swiftly enough.

Finally, as an equitable consideration, the SBA is a guarantor and may not, as here, be called upon to make good on its guarantee until late in the game. In this case, the SBA did not pay and receive the assignment until four years after the default; clearly, it could

have been possible that this act would not have occurred until after the six years had run from the original default. Application of the Debtor's rule would preclude the SBA from a foreclosure remedy at that point.[1] This is neither sensible nor fair. Unlike the assignee of a deed of trust who, as the Debtor suggests, steps into the shoes of the seller and takes the deed of trust as it then exists, the SBA was a party to this transaction from the very beginning, having provided the necessary guarantee that induced Liberty National Bank to lend the money to the Debtor in the first place. Under these circumstances, it is disingenuous for the Debtor to suggest that this was merely a private relationship to which the SBA came at a later time and that the SBA took the assignment with the risk that enforcement of the lien may be subject to a statute of limitations defense.

Therefore, an application of the *Kimbell* factors leads to the conclusion that federal law in this case means just that, and does not implicate state statutes of limitations.

## B. SBA's Motion for Stay Relief

■ The Debtor admits he has made no payments for many months on either the first or the second lien. There is no serious dispute that the Debtor lacks equity and, although the Debtor listed the house on his schedules, it appears that he may have no legal interest in it because of a quit claim deed he executed in favor of his mother several years ago. Debtor's counsel avowed that the Debtor could and would cure all post-petition defaults on the first lien promptly. There is neither an agreement, nor the likelihood of one, on curing arrearages on the second lien.

SBA's interest in the collateral is not adequately protected; therefore, relief from the stay is appropriate. The Debtor has made no effort in his plan to deal with claim; rather, he has specifically stated that no payments will be made to SBA on the first lien through the plan or otherwise. At this point,

---

1. The SBA argued at the hearing that existing caselaw establishes that the statute does not begin to run on its *in personam* claim until it receives an assignment of the note and security

documents from the initial lender. Because the SBA has abandoned its claim to personal liability of the Debtor, this issue is neither addressed nor resolved.

curing the post-petition defaults on the first lien is not enough; some adequate way of protecting the SBA's second lien must be provided by the Debtor to avoid complete relief from the stay. None has yet been put forth.

 However, notwithstanding SBA's counsel's avowal that the agency would no longer negotiate with Debtor, the Court believes it is appropriate, now that the validity of the second lien is no longer in doubt, to allow a short period for the parties to attempt to resolve their differences. Therefore, the order lifting the stay will not be effective for thirty days. If the parties reach agreement in that time, the court will approve the agreement. If not, the Debtor may submit a further response to the motion for relief, stating specifically how he proposes to provide adequate protection to the SBA on each of its liens. If such a response is filed before within thirty days from the date of this Order, the Court will set an expedited hearing to determine its sufficiency. The Debtor is admonished that the Court will assess sanctions against him if it is determined that the proposed adequate protection is clearly insufficient or not proposed in good faith.

For the foregoing reasons,

**IT IS ORDERED AS FOLLOWS:**

1. The Debtor's objection to the SBA claim is overruled and the SBA claim is allowed as a non-recourse claim.

2. The SBA is granted relief from the automatic stay, effective thirty days from the date of this order.